UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LIONEL McCRAY,

                        Plaintiff,

        v.                                                No. 16-CV-1730 (KMK)

SUPERINTENDENT WILLIAM LEE,                              OPINION & ORDER
WATCH COMMANDER LT. PLIMLEY,
SERGEANT KUTZ,

                        Defendants.

Appearances:

Lionel McCray
Auburn, NY
*Pro Se Plaintiff*

Bradley G. Wilson, Esq.
Office of the Attorney General of the State of New York
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff Lionel McCray ("Plaintiff"), currently an inmate at Collins Correctional Facility,

proceeding pro se, filed a Second Amended Complaint ("SAC"), pursuant to 42 U.S.C. § 1983,

against Superintendent William Lee ("Lee"), Watch Commander Lt. Plimley ("Plimley"), and

Sergeant Kutz ("Kutz," and collectively, "Defendants"), alleging violations of Plaintiff's and

other similarly situated inmates' rights under the Eighth Amendment and New York State law.

(*See* SAC (Dkt. No. 60).)[1]  Before the Court is Defendants' Motion To Dismiss pursuant to

---

[1] To the extent that Plaintiff seeks to bring a class action and assert claims on behalf of
third parties, (*see* SAC II(D) ¶ 1 (Dkt. No. 60)), such claims are dismissed.  It is well settled that
a "*pro se* plaintiff may not act as the representative of a class."  *Terio v. Johann*, No. 05-CV-
5918, 2006 WL 2819659, at *1 n.4 (S.D.N.Y. Sept. 29, 2006), *aff'd*, 257 F. App'x 374 (2d Cir.

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion"). (See Notice of Defs.'
Mot. To Dismiss (Dkt. No. 64)); Mem. of Law in Support of Defs.' Mot. To Dismiss ("Defs.'
Mem.") (Dkt. No. 65).) For the reasons to follow, Defendants' Motion is granted.

## I. Background

The Court assumes the Parties' familiarity with the facts and the procedural history of
this case, as described in *McCray v. Lee*, No. 16-CV-1730, 2017 WL 2275024 (S.D.N.Y. May
24, 2017). The Court will therefore recount only the information necessary to resolve the instant
Motion and the new allegations contained in the SAC.

### A. Factual Background

The following facts are drawn from Plaintiff's SAC and are taken as true for the purpose
of deciding the instant Motion. Plaintiff was a convicted prisoner incarcerated at Green Haven
Correctional Facility ("Green Haven") during the time of the alleged events. (SAC II(A).)[2]

On February 20, 2014, at approximately 10:10 a.m., Plaintiff was on "a call-out list [for
keeplock recreation] and escorted by . . . Kutz to the doorway of the G and H block [recreational]
yard" of Green Haven. (*Id.* II(A)–(C); II(D) ¶ 14.) Kutz "gave Plaintiff . . . a direct [o]rder to
proceed into the" yard "to observe a limited one hour a day exercise." (*Id.* II(D) ¶ 14.) Snow

---

2007) (*citing Phillips v. Tobin,* 548 F.2d 408, 413–15 (2d Cir. 1976); *see also* 28 U.S.C. § 1654
("[T]he parties may plead and conduct their own cases personally or by counsel"); *Berrios v.
New York City Hous. Auth.*, 564 F.3d 130, 132 (2d Cir. 2009) ("Although § 1654 thus recognizes
that an individual generally has the right to proceed *pro se* with respect to his *own* claims or
claims against him personally, the statute does not permit unlicensed laymen to represent anyone
else other than themselves." (internal quotation marks omitted)); *Iannaccone v. Law,* 142 F.3d
553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self, a person may not
appear on another person's behalf in the other's cause").

[2] The SAC is on a standard prisoner complaint form without standard paragraph
numbering. The Court will therefore cite to the SAC by heading and sub-heading number, and
when applicable, paragraphs within those sub-headings.

that had fallen in the yard "melted by day creating run-off's [sic] that later refroze by night, forming ice" and "fresh snow covered prior formed ice." (*Id.* II(D) ¶ 10.) Plaintiff was "walk[ing] down the narrow path walkway between H block and the snow covered handball court. . . [and] tr[ying] to avoid an about three feet long frozen solid sheet of ice on the yard walkway floor," when he "slipped on the frozen sheet of ice and fell." (*Id.* II(D) ¶ 14.) "[I]n an attempt to save his hand and face from injury," Plaintiff "folded himself . . . and braced for impact with the walkway floor, thereby landing on his left shoulder." (*Id.*) Upon impact, "Plaintiff heard a pop from his ankle area." (*Id.*)

"Kutz was not available in the yard," and "'[I]nmate Webley' came to help Plaintiff up." (*Id.* II(D) ¶ 15.)³ "Plaintiff limped back to E block" where he "remov[ed] his boot and show[ed] [a correctional] officer his swollen left ankle," and "requested an emergency sick-call." (*Id.* II(D) ¶ 16.) A doctor at Green Haven "took an incident report and issued Plaintiff a bandage and some painkillers." (*Id.*) "Plaintiff's health care provider ordered an [x]-ray and MRI after Plaintiff filed a grievance for lack of adequate medical care and the horrendous conditions in the facility's yard." (*Id.*)

Plaintiff avers that "[t]here was no snow storm in progress at the time of [his] injuries," (*id.* II(D) ¶ 15), and that Kutz, "who[] was charged with supervision of . . . [i]nmates['] one hour exercise in the facility's G and H block yard on February 20[], 2014, showed deliberate

---

³ Plaintiff includes with the SAC an affidavit from inmate Clive Webley, who states that on Februray 20, 14, he "found [Plaintiff] laying on the snow and holding his leg." (Aff. of Clive Webley 21 ¶ 2 (Dkt. No. 60).) Webley "helped [Plaintiff] up and brushed the snow off [Plaintiff] and [Plaintiff] told [Webley] that he had just slipped and fell on the icey [sic] floor in front of us." (*Id.* ¶ 3.) "[Plaintiff] then asked [Webley] to the call the police. [Webley] looked around the yard but could not find any correctional officers in the yard." (*Id.* ¶ 3.) "There was snow and ice from prior storms all around the yard and there was'nt [sic] any snow storm in progress on that morning." (*Id.* ¶ 5.) "On the morning of this incident, none of the minimum procedures of clearing the yard was done." (*Id.* ¶ 6.)

indifference to [i]nmates['] safety" by allowing the yard and walkways to remain "covered with ice and snow." (*Id.* II(D) ¶ 12.) Kutz was "the last in the chain-of-authorities to 'inspect' the G and H block yard, [and] knew of the deteriorating yard condition." (*Id.*; *see also id.* II(D) ¶ 19(c) (alleging Kutz "inspected the G and H yard" and was "well aware of the severe danger of deteriorating winter conditions within the yard).) Nonetheless, Kutz "disregarded any need to take any corrective measures to fix the unsafe conditions within the yard, before opening it for use for keeplock [i]nmates['] exercise." (*Id.* II(D) ¶ 19(c).) Plaintiff contends that Kutz also "showed deliberate indifference when he gave Plaintiff . . . a direct [o]rder to proceed into the . . . yard . . . under said deteriorating conditions." (*Id.* II(D) ¶ 13.) "[D]ays after Plaintiff filed a grievance regarding inadequate medical care for his yard injuries and the hazardous conditions within the facility's yards," Kutz spoke to Plaintiff about the grievance and asked if Plaintiff intended to sue. (*Id.* II(D) ¶ 19(c).) Plaintiff replied "yes," and in response, "Kutz laughed and said 'you not [sic] going to get any money and nothing is going to happen.'" (*Id.*) Kutz "then walked away, despite seeing that Plaintiff had suffered and was suffering serious injuries from a swollen left ankle." (*Id.*)

Plaintiff further alleges that Lee, as Superintendent of Green Haven, "was responsible for the policy making, operations, management, care[,] and custody of the convicted prisoners housed at [Green Haven]," and was "also ultimately responsible for the training and supervision of the correctional officers employed at Green Haven." (*Id.* II(D) ¶ 2.)[4] Plaintiff contends "Lee exercised deliberate indifference to the health, safety[,] and limited exercise needs of the [i]nmates . . . when he created a policy and custom of no snow and ice removal from the facility's recreational yards during the winter months," (*id.* II(D) ¶ 3), and "not installing winter

---

[4] Plaintiff has sued Lee in his official and individual capacity. (SAC II(D) ¶ 3.)

snow and ice removal access ways or route[s]," (*id.* II(D) ¶ 7).  Lee's policies also included

"closing down the facility's C, D[,] and J block yard for entire winter seasons" and "restricted

access to the facility's only in-door [sic] [gym]."  (*Id.* II(D) ¶ 3.)

Plaintiff also alleges that Plimley is "an agent of" Lee's and is "responsible for

implementing" policies and customs at Green Haven related to snow and ice removal.  (*Id.* II(D)

¶ 4.)[5]  According to Plaintiff, Plimley had "authority to prevent harm to facility [i]nmates by

authorizing facility recreational yards safe for use" and "perform[ing] . . . necessary inspections."

(*Id.*)  Plimley allegedly "showed deliberate indifference to the deteriorating conditions of

hazardous piles of snow and ice in the facility's yards during the winter months of 2014" and

"[o]rdered" the F and H yards "safe for keeplock [i]nmates exercise under hazardous

deteriorating conditions."  (*Id.* II(D) ¶ 5.)

According to Plaintiff, Lee and Plimley "had actual and constructive knowledge of the

dangerous winter conditions" that resulted from their policies and customs because the

"hazardous conditions [were] easily visible from the facility's long hallways and through the

windows."  (*Id.* II(D) ¶ 7.)  Plaintiff avers that his grievance filed with Lee after his slip and fall

further demonstrates "deliberate indifference" and a "disregard . . . for adequate corrective

measures or a change in policy and custom."  (*Id.* II(D) ¶ 19(a).)  Additionally, other "[i]nmates

had filed grievances regarding this custom[,] practice[,] and policy" and "Defendants failed to

take any corrective actions or change . . . [the] policy and custom."  (*Id.* II(D) ¶ 7; *see also id.*

II(D) ¶ 19(a) (same).)

Plaintiff alleges Defendants Lee and Plimley were deliberately indifferent to

"[i]nmates['] need for a safe limited daily exercise" and had "the intent to deter [i]nmates[']

---

[5] Plaintiff has sued Plimley in his official and individual capacity.  (SAC II(D) ¶ 5.)

outdoor exercises by allowing months of hazardous winter accumulation of snow and ice to remain unremoved." (*Id.* II(D) ¶ 8.) Their policies and customs "obstructed travel [and] deni[ed] movement within facility yards and also obstructed access to yard exercise equipment." (*Id.* II(D) ¶ 6.) This snow and ice "eliminated foot traction and posed a deadly risk of substantial harm to yard users," and put "[i]nmates in need of daily exercise in a dilemma of abandoning limited yard exercise or risk[ing] the hazardous conditions." (*Id.* II(D) ¶ 8.) Ignoring "winter snow and ice" accumulation, (*id.* II(D) ¶ 11), combined with the intentional closing of the yards in C, D, and J block, restricted access to the indoor gym, and the facility being at maximum capacity, caused "overcrowding" in the yards that were open, (*id.* II(D) ¶¶ 9, 11), and an "obstacle course" of snow and ice, (*id.* II(D) ¶ 11). "[A]ll together," these policies "had a mutually enforcing combined effect of a systematic intent to det[e]r and discourage facility [i]nmates from limited exercise and [showed] disregard for health and safety." (*Id.* II(D) ¶ 9.) Plaintiff alleges that "[t]he deprivation of a safe and hazard free prison recreational yard, for limited exercise, deprived Plaintiff . . . of the minimum measures of life's necessities, such as limited daily exercise and [a] hazard free exercise environment, health[,] and safety." (*Id.* II(D) ¶ 11.)

Plaintiff alleges his Eighth Amendment rights were violated by these policies, which were intended to deny inmates "movement," "exercise," and "safety." (*Id.* II(D) ¶ 19(a).) More specifically, Plaintiff alleges he has suffered "unnecessary exposure to unsafe facility yard conditions, denial of a hazard free limited exercise time . . . denial of access to the facility's in-door [sic] [gym] for limited exercise[,] and denial of safety and security due to overcrowding within the facility's yards during the winter months." (*Id.* II(D) ¶ 19(d).) Plaintiff also alleges his state law rights were violated by Defendants' gross negligence. (*Id.* II(D) ¶¶ 21–22.)

Plaintiff contends he is "permanently and severely injured in the regions of his left ankle and left shoulder" and he "suffer[ed] and continue[s] to suffer great bodily and mental 'pains.'" (*Id.* II(D) ¶ 17.)  Plaintiff had an "extensive tear to his left ankle ligament that lead to swelling . . . and months of physical therapy and steroid injection treatment," and "a left shoulder dislocation" and now his shoulder "easily pops in and out of [the] socket at random." (*Id.* at III.) Plaintiff requests declaratory and injunctive relief, as well as compensatory and punitive damages and attorney's fees.  (*See id.* V.)[6]  Plaintiff also requests that this Court "charge . . . [D]efendant . . . Lee for the [c]riminal offense of [r]eckless [e]ndangerment in the [f]irst degree."  (*Id.*)

### B.  Procedural History

Plaintiff filed his Complaint on March 7, 2016.  (*See* Dkt. No. 2.)  On May 23, 2016, Plaintiff filed an application for the Court to request pro bono counsel, (*see* Dkt. No. 8), which the Court denied without prejudice on June 7, 2016, (*see* Dkt. No. 10).  Plaintiff filed an Amended Complaint on August 4, 2016.  (*See* Dkt. No. 20.)

On January 4, 2017, Defendants filed a Motion To Dismiss and accompanying memorandum of law.  (*See* Dkt. Nos. 44–45.)  Plaintiff filed his Opposition to Defendants' Motion on February 1, 2017, (*see* Dkt. No. 52), and Defendants filed their Reply on February 16, 2017, (*see* Dkt. No. 53).  On May 24, 2017, the Court granted Defendants' Motion To Dismiss and granted Plaintiff 30 days to file an Amended Complaint alleging additional facts and otherwise addressing the deficiencies identified in the Opinion.  (*See* Dkt. No. 59.)

---

[6] The Court denies Plaintiff's request for attorney's fees, because "a pro se litigant who is not a lawyer is not entitled to attorney's fees."  *Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (italics omitted).

On June 14, 2017, Plaintiff filed the SAC.  (*See* SAC.)  On June 26, 2017, Defendants

filed a premotion letter seeking leave to file a motion to dismiss the SAC, (*see* Dkt. No. 61), and

pursuant to a memo endorsement, the Court set a briefing schedule for the instant Motion, (*See*

Dkt. No. 62).  On July 10, 2017, Plaintiff filed a letter to the Court responding to the premotion

letter and explaining why the Motion should be denied.  (Letter from Plaintiff to Court (July 10,

2017) ("July 10 Pl. Letter) (Dkt. No. 63).)  On August 4, 2017, Defendants filed a Motion to

Dismiss and accompanying memorandum of law.  (*See* Dkt. Nos. 64–65.)  Plaintiff filed

opposition papers on September 19, 2017, (*see* Dkt. Nos. 68–69), and Defendants filed their

reply on September 26, 2017, (*see* Dkt. No. 71).[7]

## II.  Discussion

### A.  Standard of Review

Defendants move to dismiss Plaintiff's SAC pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).  (*See* Mem. of Law in Supp. of Defs.' Mot. To Dismiss ("Defs.' Mem.") 1

(Dkt. No. 65).)

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject

matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical."

*Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn.

June 3, 2014) (internal quotation marks omitted); *see also Neroni v. Coccoma*, No. 13-CV-1340,

---

[7] On November 7, 2017, Plaintiff wrote the Court requesting an extension of time "to seek mental health help for [his] depression and anxiety before continuing this litigation" or appointment of counsel.  (*See* Dkt. No. 72.)  Plaintiff also requested to file a "supplementary complaint" to bring claims for conspiracy to retaliate against Plaintiff.  (*See id.*)  Pursuant to a memo endorsement, the Court denied the extension of time and request for appointment of counsel as unsubstantiated and belied by the filings thus far.  The Court informed Plaintiff that if he wishes to add any new claims, he must file a Third Amended Complaint, but should wait to do so until after the pending Motion is resolved.  (*See* Dkt. No. 73.)

2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (same), *aff'd*, 591 F. App'x 28 (2d Cir. 2015).

"In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (same). However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Gonzalez*, 2014 WL 2475893, at *2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). This allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules. *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009); *see also Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (same).

### 1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or

constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *see also Butler v. Ross*, No. 16-CV-1282, 2016 WL 3264134, at *3 (S.D.N.Y. June 14, 2016) (same).  Nevertheless, "[u]nlike Article III standing, which ordinarily should be determined before reaching the merits, statutory standing may be assumed for the purposes of deciding whether the plaintiff otherwise has a viable cause of action." *Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006) (citation omitted).  While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration and internal quotation marks omitted); *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.").

### 2.  Rule 12(b)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alteration, and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)). Further, "[f]or the purpose of

resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). However, when the complaint is filed by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839,

at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendants' request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

### B.  Analysis

The Court construes Plaintiff's SAC to allege violations of his Eighth Amendment rights, including a claim for damages for the injuries he sustained as a result of the fall in the facility's yard and a claim for declaratory and injunctive relief from the facility's policies and customs regarding winter snow and ice removal and its limitations on exercise.  (SAC V.)  Plaintiff also alleges violations of "New York law of Gross Negligence" and New York State Department of Corrections "regulation[s] . . . with respect to [i]nmate's health, safety[,] and humane treatment." (SAC II(D) ¶ 21.)

Defendants raise five arguments in their Motion: (1) Plaintiff has not alleged a violation of his Eighth Amendment rights; (2) Plaintiff's injunctive relief claims are moot; (3) Defendants are entitled to qualified immunity; (4) the Court has no jurisdiction over the state law claims; and (5) the official capacity damages clams are barred by the Eleventh Amendment.  (Defs.' Mem. 4–13.)  The Court will address each in turn.

### 1.  Plaintiff's Eighth Amendment Claim For the Slip and Fall

It is axiomatic that "[t]he conditions of a prisoner's confinement can give rise to an Eighth Amendment violation."  *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)).  "In such cases, a prisoner may prevail only where he proves both an objective element—that the prison officials' transgression

was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 834 (italics omitted)); *see also Garcia v. Fischer*, No. 13-CV-8196, 2016 WL 297729, at *4 (S.D.N.Y. Jan. 22, 2016) (same).[8]

To satisfy the "objective" prong, "a plaintiff must show that 'the conditions, either alone or in combination, pose an unreasonable risk of serious damage to [an inmate's] health,' which can be satisfied if an inmate is deprived of 'basic human needs such as food, clothing, medical care, and safe and sanitary living conditions.'" *Aikens v. Royce*, No. 14-CV-663, 2016 WL 5720792, at *6 n.10 (S.D.N.Y. Sept. 30, 2016) (quoting *Walker*, 717 F.3d at 125). "Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency." *Phelps*, 308 F.3d at 185. "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citation omitted) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) ("Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim.)."

Under the "subjective" element, "a defendant 'cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of

---

[8] The status of a plaintiff as either a convicted prisoner or pretrial detainee dictates whether his conditions of confinement are analyzed under the Eighth or Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Plaintiff alleges he was a convicted prisoner on February 20, 2014. (*See* SAC II.D ¶ 1). Accordingly, the Court analyzes Plaintiff's claims under the Eighth Amendment standard.

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Aikens*, 2016 WL 5720792, at *6 n.10 (quoting *Phelps*, 308 F.3d at 185–86). "A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates." *Id.* (internal quotation marks omitted). Allegations of mere negligence by prison officials will not support a claim under the Eighth Amendment. *See Edwards v. City of New York*, No. 08-CV-5787, 2009 WL 2596595, at *2 (S.D.N.Y. Aug. 24, 2009) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Farmer*, 511 U.S. at 836; *Daniels v. Williams*, 474 U.S. 327, 328 (1986)).

The Court dismissed the earlier iteration of Plaintiff's Eighth Amendment claim because Plaintiff's complaint failed to allege a "sufficiently serious" deprivation. *McCray*, 2017 WL 2275024, at *6. The Court must dismiss the instant Eighth Amendment claims for the same reason, as Plaintiff's claims in the SAC do not rise to the level of a constitutional violation. "[I]n prisons—where the conditions of confinement are not voluntary or recreational . . . —courts have found that 'slip-and-fall plaintiffs' do not state a cognizable claim under the Eighth Amendment." *Korotkova v. United States*, 990 F. Supp. 2d 324, 330 (E.D.N.Y. 2014); *see also Clayton v. Morgan*, 501 F. App'x 174, 176 (3d Cir. 2012) (per curiam) ("Although black ice in the prison yard is less than desirable, [the defendant's] decision to permit inmates to use the yard in spite of the presence of black ice falls short of the type of conduct that would constitute an Eighth Amendment violation."); *Martinez v. Schriro*, No. 14-CV-3965, 2017 WL 87049, at *5 (S.D.N.Y. Jan. 9, 2017) ("As courts in this circuit have regularly found, wet floor conditions that cause a prisoner to slip and fall do not constitute an Eighth Amendment violation."); *Cherry v.*

*Spoato*, No. 15-CV-1832, 2015 WL 2089588, at *4 (E.D.N.Y. May 5, 2015) (finding that allegations by a prisoner that there was "no salt on the ground and ice was present . . . do not constitute a constitutional deprivation" (internal quotation marks omitted)); *Martin v. City of New York*, No. 11-CV-600, 2012 WL 1392648, at *9 (S.D.N.Y. Apr. 20, 2012) (dismissing complaint that alleged that the plaintiff slipped and fell on a wet floor while wearing ill-fitting shoes); *Rummer v. North Dakota*, No. 12-CV-020, 2012 WL 6044713, at *6 (D.N.D. Mar. 27, 2012) (holding that "occasional slippery conditions resulting from winter snow and ice" are "a hazard shared by inmates and staff alike" and that "[a]t most, [the plaintiff's] complaint allege[d] that [the] defendants were negligent" and "[s]uch allegations are insufficient to state claim under the Eighth Amendment"), *adopted by* 2012 WL 6044720 (D.N.D. Dec. 5, 2012); *Carr v. Canty*, No. 10-CV-3829, 2011 WL 309667, *2 (S.D.N.Y. Jan. 19, 2011) (report & recommendation) ("[C]ourts have held that allegations of wet conditions leading to a slip-and-fall will not support a [§] 1983 claim even where . . . the plaintiff . . . alleges that the individual defendants had notice of the wet condition but failed to address it." (internal quotation marks omitted)); *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 113 (E.D.N.Y. 2011) ("[T]he alleged water in the shower area [did] not deprive [the] plaintiff of a basic human need and, thus, cannot as a matter of law give rise to a constitutional violation that can be brought under [§] 1983."); *Flowers v. City of New York*, 668 F. Supp. 2d 574, 578 (S.D.N.Y. 2009) ("Any claim against the [c]ity for the slip and fall that resulted in [the] plaintiff's ankle injury—a garden variety tort—is not cognizable under [§] 1983 . . . ."); *Edwards*, 2009 WL 2596595, at *2–3 (granting a motion to dismiss where the plaintiff slipped and fell on a wet hallway floor) (collecting cases); *Heredia v. Doe*, 473 F. Supp. 2d 462, 463 (S.D.N.Y. 2007) (dismissing a § 1983 claim based on an allegation that the plaintiff "slipped and fell while walking to his cell" because "the pleadings

fail to state facts which constitute anything more than a claim for negligence, for which there is no cause of action under . . . § 1983"); *Sylla v. City of New York*, No. 04-CV-5692, 2005 WL 3336460, at *3–5 (E.D.N.Y. Dec. 8, 2005) (allegations that the plaintiff slipped after being directed to use a bathroom with a wet floor failed to state a claim under the Eighth Amendment).

Plaintiff offers new allegations in the SAC in an attempt to demonstrate that the facts here constitute the type of exceptional circumstances warranting "depart[ure] from the general rule barring Eighth Amendment liability in prison slip and fall cases." *Reynolds v. Powell*, 370 F.3d 1028, 1032 (10th Cir. 2004). The Court's prior Opinion, *McCray*, 2017 WL 2275024, at *5 n.2, cited *Akers v. Wexford Health Sources, Inc.*, No. 14-CV-997, 2014 WL 5023361, at *5 (S.D. Ill. Oct. 7, 2014), as an example of an exceptional circumstance. In *Akers*, the court denied the defendants' motion to dismiss the plaintiff's complaint alleging "one or more of the [d]efendants . . . '*ordered*' him and the rest of the prisoners to walk over the ice in order to get to the dining hall, despite their knowledge of the 'obvious environmental hazard.'" *Akers*, 2014 WL 5023361, at *5. Plaintiff alleges that Kutz "ordered" Plaintiff to enter the yard for recreation time. (*See* SAC II(D) ¶ 13 ("Kutz . . . gave Plaintiff . . . a direct [o]rder to proceed into the G and H block yard for a one hour [k]eeplock exercise under said deteriorating conditions"); *id.* II(D) ¶ 14 (explaining Plaintiff was injured "while so observing limited one hour exercise within the yard pursuant to . . . Kutz['s] [o]rders); *id.* II(D) ¶ 19(c) (same).) However, these allegations are not sufficient to indicate special circumstances. *Akers* is not controlling law, and other district courts have held that a correctional officer's order or instruction to a prisoner go into an icy or slippery area is insufficient to raise a claim under § 1983. *See Sylla*, 2005 WL 3336460, at *3 (holding that "instruction to use a bathroom that is wet, or even flooded, does not inherently constitute an excessively serious risk" to support a constitutional claim); *see also Ashford v.*

*Hawkinberry*, No. 14-CV-1718, 2016 WL 3156483, at *5 (W.D. Pa. June 2, 2016) (holding that allegations the defendants "forced [the plaintiff] out on [the] yard during a cold winter day and he fell on a patch of ice and injured his knee and back . . . do not give rise to a substantial risk of serious harm or challenge the common standards of decency, nor do these allegations demonstrate deliberate indifference for purposes of asserting an Eighth Amendment violation"); *Rummer*, 2012 WL 6044713, at *6 (holding that allegation that the plaintiff "was forced to walk the ice-covered route from the inmate housing area to [his job]" was insufficient to state claim under the Eighth Amendment). Here, too, instructing Petitioner to enter a snow and ice covered prison yard, does not inherently constitute an excessively serious risk to support a constitutional claim, as conditions such as winter snow and ice "constitute a daily risk faced by members of the public at large." *Reynolds*, 370 F.3d at 1031 (discussing slippery floors).

And, the facts in *Akers* are distinguished from those Plaintiff has alleged. *Akers*, 2014 WL 5023361, at *5. Here, unlike in *Akers*, Plaintiff was not "*ordered . . . to walk over the ice*." *Id.* Rather, Plaintiff alleges he was "ordered" to go into the yard. (SAC II(D) ¶¶ 13, 14, 19(c).) And, while the patch of sidewalk Plaintiff fell on may have been covered with snow and ice, the entire yard that he was "order[ed] to proceed into," (*id.* II(D) ¶ 14), was not "completely covered with solid ice (approximately an inch thick)," *Akers*, 2014 WL 5023361, at *5 (internal quotation marks omitted), as was the case with the sidewalk inmates were ordered to walk across in *Akers*. Rather, Plaintiff alleges that he was trying to avoid "an about three feet long frozen solid sheet of ice on the yard walkway floor, by stepping on a snowbank pile," but does not allege that he was specifically ordered to walk on that patch of ice. (*id.* II.(D) ¶ 14.) The *Akers* court found that particular "scenario could be considered to pose an excessive or even inevitable risk of injury," and then contrasted those conditions with the exact circumstances that faced Plaintiff here—"a

snowy area with isolated ice patches." *Id.* Thus, even if *Akers* was controlling law, it is not on point. Nor is this a case where Plaintiff has unique characteristics that made him particularly vulnerable to standard wintery conditions. *See Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) (distinguishing the facts from a simple case of "slippery shower floors," because the defendants were aware the plaintiff was on crutches and had repeatedly fallen and injured himself in the shower). Plaintiff has thus not alleged the conditions causing his slip and fall posed "an unreasonable risk of serious damage to [his] health." *Aikens*, 2016 WL 5720792, at *6 n.10.[9]

Even if the first prong of the test were satisfied, Plaintiff cannot demonstrate Defendants acted with a "sufficiently culpable state of mind." *Phelps*, 308 F.3d at 185 (internal quotation marks omitted). Plaintiff alleges that each Defendant knew or should have known about the unsafe conditions which caused Plaintiff's fall and were generally responsible for supervision of inmates as well as creating and implementing policies and customs related to winter snow and ice removal. (*See* SAC II(D) ¶¶ 2, 4, 7, 12.) In the Eighth Amendment context, the Supreme Court has drawn a "distinction between mere negligence and wanton conduct." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). The allegations in the SAC are insufficient to allege plausibly

---

[9] The cases Plaintiff relies on in his response to Defendants' pre-motion letter addressed vastly different conditions of confinement claims then those Plaintiff has alleged. (*See* July 10 Pl. Letter 2–3 (citing *Hutto v. Finney*, 437 U.S. 678, 682–83 (1978) (upholding the district court's remedial order dealing with conditions in punitive isolation, which included "an average of 4, and sometimes as many as 10 or 11, prisoners . . . crowded into windowless 8'x10' cells containing no furniture other than a source of water and a toilet that could only be flushed from outside the cell. . . . Prisoners in isolation received fewer than 1,000 calories a day"); *Holmes v. Goldin*, 615 F.2d 83, 84–85 (2d Cir. 1980) (per curiam) (reversing dismissal of claim against correction officers who allegedly left open the cell door of an inmate the plaintiff had fought with the day before, who then left his cell and assaulted the plaintiff); *Wilson v. Schomig*, 863 F. Supp. 789, 795 (N.D. Ill. 1994) (denying the defendants' motion for summary judgement on prisoner's claims relating to denial of cleaning supplies and lack of heat, but granting summary judgment on prisoner's claims regarding dirt, dust, roaches, and a leaky ceiling in his cell).)

that any Defendant acted with a sufficiently culpable state of mind because Plaintiff has, at most, alleged that Defendants were negligent, "not that any [D]efendant obdurately and wantonly refused to remedy a specific risk to [P]laintiff." *Seymore v. Dep't of Corr Servs.*, No. 11-CV-2254, 2014 WL 641428, at *4 (S.D.N.Y. Feb. 18, 2014); *see also Farmer,* 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) ("To succeed in showing deliberate indifference, [a plaintiff] must show that the acts of defendants involved more than lack of due care, but rather involved obduracy and wantoness in placing his health in danger."). Any involvement Defendants may have had in failing to remedy the conditions in the yard or by allegedly creating or implementing the policies and customs related to winter ice removal—even if they were on notice—are negligence claims, and cannot support an Eighth Amendment claim. *See Graham v. Poole,* 476 F. Supp. 2d 257, 260 (W.D.N.Y. 2007) (holding, in case involving inmate slip and fall claim, that "[a]lthough plaintiff alleges that defendants were aware of the dangerous condition of the shower floor and failed to rectify it, that amounts to nothing more than negligence, and is not enough to establish an Eighth Amendment claim"); *Edwards,* 2009 WL 2596595, at *2 (noting that "courts have held that allegations of wet conditions leading to a slip-and-fall will not support a [§] 1983 claim even where. . . the plaintiff also alleges that the individual defendants had notice of the wet condition but failed to address it"); *Davis v. Reilly,* 324 F. Supp. 2d 361, 367 (E.D.N.Y. 2004) (holding that even if the individual defendant "had notice of wet floors outside the shower area prior to the plaintiff's slip and fall," the alleged "failure to provide shower mats [to remedy the situation] does not rise to the level of a constitutional violation within the meaning of [§] 1983 and . . . thus is not actionable").

Moreover, Plaintiff's "conclusory legal allegation[s] of 'deliberate indifference'" are insufficient to survive the Motion. *Sylla*, 2005 WL 3336460, at *4. Accordingly, Plaintiff has not plausibly alleged that Defendants acted with a sufficiently culpable state of mind to sustain his conditions-of-confinement claim.

Were the Court to assume, *arguendo*, that Plaintiff had sufficiently plead a claim for violation of his Eighth Amendment rights, Defendants would be protected by qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "[Qualified] immunity protect[s] government's ability to perform its traditional functions . . . by helping to avoid unwarranted timidity in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the harmful distractions from carrying out the work of government that can often accompany damages suits." *Filarsky v. Delia*, 566 U.S. 377, 389–90 (2012) (second alteration in original) (citation and internal quotation marks omitted). Qualified immunity shields a defendant from standing trial or facing other burdens of litigation "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) (internal quotation marks omitted).

The Supreme Court has held that when evaluating an asserted qualified immunity defense, a court may begin by examining whether a reasonable officer in the defendant's position would have believed his or her conduct would violate the asserted constitutional right. *See Pearson*, 555 U.S. at 236 (overruling *Saucier v. Katz*, 533 U.S. 194 (2001), and explaining that judges are no longer required to begin by deciding whether a constitutional right was violated but are instead "permitted to

21

exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first").  The Supreme Court has further instructed that "[t]o be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right.  In other words, existing precedent must have placed the statutory or constitutional question beyond debate."  *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (second alteration in original) (citations and internal quotation marks omitted).  Furthermore, "the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official."  *Id.* at 665 (citations and internal quotation marks omitted).  Otherwise stated, to determine whether a right is clearly established, courts must determine "whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful."  *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011).

Ultimately, a prisoners constitutional right against a failure to remedy naturally accumulating ice or snow during winter months has not been clearly established by either the Supreme Court or the Second Circuit.  As previously discussed, protection from slip-and-fall accidents in prisons does not raise to the level of a constitutional right.  *See Reynolds*, 370 F.3d at 1032 (noting the "general rule barring Eighth Amendment liability in prison slip and fall cases").  No Supreme Court or Second Circuit case involving a plaintiff's fall on a slippery prison surface has held that failure to prevent such naturally occurring conditions is the type of objectively serious risk of harm that violates the Eighth Amendment.  In fact, there is a split among various district courts over what types of exacerbating factors are needed to create an exception to the general rule that a complaint about a slippery floor, without more, does not state an arguable claim of deliberate indifference.  *See, e.g.*, *Fredricks v. City of New York*, No. 12-CV-3734, 2014 WL 3875181, at *4–5 (S.D.N.Y. July 23, 2014) (noting "split in the case law" over whether "allegations of slippery floors combined with a

prisoner's disability, without previous slips and falls, are []sufficient to demonstrate that there was a significant risk of serious harm").  Accordingly, because there is no clearly established constitutional right to a prison yard without naturally accumulating ice or snow during winter months, Defendants' alleged conduct is protected by qualified immunity.[10]

### 2.  Request for Declaratory Injunction Regarding Green Haven's Policies and Customs Regarding Winter Snow and Ice Removal

Plaintiff requests a declaratory judgement that "[D]efendants violated the United States Constitution and State Laws" and an injunction "ordering that [D]efendant or their agents refrain from their custom and policy of letting snow and ice accumulate in facility rec[reation] yards all winter, without removal and implement more adequate corrective measures."  (SAC V.) However, Plaintiff was transferred from Green Haven to Auburn Correctional Facility sometime between the actions alleged in the Complaint and the filing of the Complaint.  (*See* SAC I(A) (listing Auburn Correctional Facility as Plaintiff's current place of confinement).)  The Court therefore dismisses Plaintiff's claims for declaratory and injunctive relief against Defendants as moot.  "It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."  *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996); *see also Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("[A]n inmate's transfer

---

[10] Plaintiff alleges that he "filed a grievance regarding inadequate medical care for his yard injuries and the hazardous conditions within the facility's yards."  (SAC II.(D) ¶ 19(c); *see also id.* ¶ 16.)  Plaintiff, however, does not appear to raise a claim in the SAC for inadequate medical care, (*see* SAC II.(D) ¶ 18 (explaining federal claim as violation of Plaintiff's Eighth Amendment right to "a hazard free environment to observe limited exercise, health[,] and safety"), and he makes no allegations regarding how the care was inadequate, what harm he suffered as a result of the inadequate care, or whether the grievance rectified the issues. Accordingly, to the extent Plaintiff intended to raise a separate Eighth Amendment claim for deliberate indifference to serious medical needs, Plaintiff has failed to allege a "deprivation of adequate medical care" that is "sufficiently serious."  *Spavone v. N.Y. State Dep't of Cor. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks omitted).

from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").[11] The Court therefore dismisses Plaintiff's federal claims against Defendants.

---

[11] The Court does not interpret Plaintiff's complaint to seek any relief for the alleged polices and customs related to winter snow and ice removal and access to exercise other than injunctive relief. If Plaintiff in fact seeks damages for an Eighth Amendment claim for restricted access to exercise separate from his slip and fall injuries, (*see* SAC II.(D) ¶ 8 (alleging the policies and customs put "[i]nmates in need of daily exercise in a dilemma of abandoning limited yard exercise or risk[ing] the hazardous conditions."); *id.* II.(D) ¶ 9 (alleging these policies "had a mutually enforcing combined effect of a systematic intent to det[e]r and discourage facility [i]nmates from limited exercise and disregard for health and safety"); *id.* II.(D) ¶ 11 (alleging that "[t]he deprivation of a safe and hazard free prison recreational yard, for limited exercise, deprived Plaintiff . . . of the minimum measures of life's necessities, such as limited daily exercise and hazard free exercise environment, health[,] and safety"); *id.* II.(D) ¶ 19(a) (alleging the policies and customs were intended to deny inmates "movement," "deter exercise," and "disregarded safety), his allegations are insufficient to state a claim. "[T]emporary limitations on access to exercise, without full denial of opportunities, do[]es not violate the Eighth Amendment." *Burns v. Martuscello*, No. 13-CV-486, 2015 WL 541293, at *12 (N.D.N.Y. Feb. 10, 2015). Defendants' choice to temporarily restrict access to some of the recreation yards due to the presence of ice, is not "based on a culpable state of mind or deliberate indifference to [Plaintiff's] health or safety, but the legitimate penological interest of waiting until the yard was cleared of ice and snow so that it would be safe for inmates to use." *Id.* Additionally, there is no constitutional right to indoor exercise. *Anderson v. Coughlin,* 757 F.2d 33, 36 (2d Cir. 1985) ("No doubt indoor exercise space would be useful to assure opportunity for vigorous exercise during inclement weather . . . [h]owever, [ ]an occasional day without exercise when weather conditions preclude outdoor activity [is not] cruel and unusual punishment. With outdoor recreation space provided and opportunity for its daily use assured, the absence of additional exercise space indoors and of recreational equipment for use in the outdoor space is not a denial of constitutional rights."); *Patterson v. City of New York*, No. 11-CV-7976, 2012 WL 3264354, at *7 (S.D.N.Y. Aug. 9, 2012) (same). Plaintiff's citation to *Goff v. Harper*, No. 90-CV-50365, 1997 WL 34715292 (S.D. Iowa June 5, 1997), is to no avail. *See id.* at *46–47 (holding that inmates in disciplinary confinement were effectively deprived of exercise during winter months). *Anderson* is controlling law in the Second Circuit. And, unlike in *Goff*, Plaintiff made use of outdoor recreation options, and has not alleged the combination of factors that led to the *Goff* court to find a constitutional violation, including the small cell sizes precluding in-cell exercise and the length of disciplinary confinement. *See id.* at *46.

### 3. State Law Claims

Defendants contend that the Court should decline to exercise jurisdiction over the state law claims if the federal claims are dismissed, or in the alternative, that the Court has no jurisdiction to hear claims for damages against Department of corrections employees. (*See* Defs.' Mem. 11–12.) The Court does not need to reach the second issue, however, because it declines to exercise supplemental jurisdiction over any of Plaintiff's state law claims. (*See* SAC II(D) ¶¶ 20–21.) Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Federal courts may exercise jurisdiction over related state-law claims when an independent basis of subject-matter jurisdiction exists." *Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013) (citing *Montefiore Med. Ctr. v. Teamsters Local*, 642 F.3d 321, 332 (2d Cir. 2011)). The Supreme Court has held that "if the federal claims [in an action] are dismissed before trial . . . the state claims should be dismissed as well," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), but "[t]he decision whether to exercise supplemental jurisdiction is entirely within the court's discretion and is not a litigant's right," *Chenensky*, 942 F. Supp. 2d at 391 (internal quotation marks omitted). "District courts weigh several factors in determining whether to exercise supplemental jurisdiction, including 'the values of judicial economy, convenience, fairness and comity.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "In weighing these values, courts look to 'the circumstances of each particular case.'" *Id.* at 391–92 (alteration omitted) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)). Because the Court has dismissed all federal claims against

Defendants, the Court declines to exercise supplemental jurisdiction over any of Plaintiff's state law claims.

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. Because Plaintiff has already been given two opportunities to amend his Complaint, (*see* Dkt. Nos. 20, 60), his Second Amended Complaint is dismissed with prejudice. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. Cty. of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alterations and internal quotation marks omitted)).

If Plaintiff still wishes to file a Third Amended Complaint raising the new claims outlined in his October 25, 2017 letter to the Court, (Dkt. No. 72), Plaintiff must do so within 30 days of this Opinion. Plaintiff may not replead any of the claims dismissed with prejudice in this Opinion.

The Clerk of Court is respectfully directed to terminate the pending Motion, (*see* Dkt. No. 64), mail a copy of the Opinion and Order to Plaintiff, and close this case.

SO ORDERED.

DATED:     March 29, 2018
           White Plains, New York

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE