UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIONEL McCRAY,<br><br>                    Plaintiff,<br><br>          -v-<br><br>SUPERINTENDENT WILLIAM LEE, WATCH COMMANDER LT. PLIMLEY, SERGEANT KUTZ,<br><br>                    Defendants. | No. 16-CV-1730 (KMK)<br><br>OPINION & ORDER |

Appearances:

Lionel McCray
Marcy, NY
*Pro se Plaintiff*

Neil Shevlin, Esq.
State of New York Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Pro se Plaintiff Lionel McCray ("Plaintiff"), currently residing at Central New York Psychiatric Center, filed a Third Amended Complaint ("TAC"), pursuant to 42 U.S.C. § 1983, against Superintendent William Lee ("Lee"), Watch Commander Lt. Plimley ("Plimley"), and Sergeant Kutz ("Kutz" and, together with Lee and Plimley, "Defendants"), alleging violations of his and similarly situated inmates' rights under the Eighth Amendment and New York State law. (*See* Third Am. Compl. ("TAC") (Dkt. No. 97).)  Before the Court is Defendants' Motion To Partially Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion").  (*See* Defs.' Not. of Mot. (Dkt. No. 115).)  For the reasons discussed below, Defendants' Motion is granted.

I.  Background

A.  Factual Background

In its March 29, 2018 Opinion & Order ("2018 Opinion"), the Court summarized in detail the allegations in Plaintiff's Second Amended Complaint (the "SAC").  (*See* Op. & Order ("2018 Op.") 2–7 (Dkt. No. 76); Second Am. Compl. ("SAC") (Dkt. No. 60).)  Plaintiff's TAC substantially replicates those allegations, albeit with minor additions.  (*Compare* SAC, *with* TAC.)  Though the Court assumes familiarity with its 2018 Opinion, it will briefly summarize the allegations carried over from the SAC to the TAC.  Where relevant, the Court will also identify any new allegations and claims raised in the TAC.

Here, as in the SAC, Plaintiff alleges that Lee, as Superintendent of Green Haven Correctional Facility ("Green Haven"), "was responsible for the policy making, operation, management, care[,] and custody of the convicted prisoners housed at [Green Haven]," and was "also ultimately responsible for the training and supervision of the correctional officers employed at Green Haven."  (TAC ¶ II(D)(2); *see also* 2018 Op. 4.)  Plaintiff asserts that Lee "exercised deliberate indifference to the health, safety[,] and limited exercise needs of [Green Haven] inmates" by "creat[ing] a policy and custom" of failing to remove snow and ice from Green Haven's outdoor exercise yards during winter months; failing to "creat[e] an egress for winter snow and ice removal from the facility's closed-in outdoor exercise areas"; "closing down the facility's C, D[,] and J block yard for the entire winter months"; and "restrict[ing] access to the facility's only [indoor] gym."  (TAC ¶ II(D)(3).)  Lee's policies, Plaintiff alleges, were "intended to deter prisoners' physical exercise at [Green Haven] and violate [their] Eighth Amendment Constitutional rights."  (*Id.*)

As in the SAC, Plaintiff alleges that Plimley, as Lee's agent, was responsible for implementing Lee's policies and inspecting recreational areas for any safety hazards.  (*Id.* ¶ II(D)(4); *see also* 2018 Op. 5.)  According to Plaintiff, Plimley showed deliberate indifference to the health, safety, and exercise needs of Green Haven prisoners when he determined that the "hazardous piles of unremoved snow and ice in the facility's outdoor exercise areas" were safe for prisoners' daily exercise use "during the winter months of 2014."  (TAC ¶ II(D)(5).)  Plimley also showed deliberate indifference by "wantonly" implementing Lee's policies, including the policy not to remove snow and ice from the facility's exercise areas; the policy not to create "egress" for snow and ice removal; the policy of closing down Green Haven's C, D, and J block yards during winter months; and the policy of restricting access to Green Haven's sole indoor gym.  (*Id.*)  Finally, Plaintiff alleges that Plimley showed deliberate indifference when, on February 20, 2014, he ordered Green Haven's G and H block yards safe for prisoners' exercise use despite "deteriorating winter conditions of unremoved snow and ice."  (*Id.*)

With respect to Kutz, the TAC alleges that he too acted as Lee's agent, and was "responsible for facility area supervision."  (*Id.* ¶ II(D)(6); *see also* SAC ¶ II(D)(12) (alleging that "Kutz, an agent of the [D]efendant William Lee, . . . was charged with supervision of Keeplock Inmates['] one[-]hour exercise in the facility's G and H block yard").)  The TAC further alleges that it was Kutz's duty at Green Haven "to enforce the policies and customs created by [Lee] and implemented by [Plimley]."  (TAC ¶ II(D)(6).)  Kutz, like Plimley, allegedly showed deliberate indifference by enforcing Lee's various policies regarding recreational space.  (*Id.* ¶ II(D)(7).)  Specifically, by carrying out Lee's policy of "closing down the C, D[,] and J block yard[s] during the winter months, restricting access to [Green Haven's] gym[,] and ignoring piles of winter snow and ice in the facility's outdoor exercise areas," Kutz

had "full knowledge . . . that he was unreasonably subjecting prisoners . . . to deprivation of limited exercise opportunit[ies] and exposing [them] to probable serious harm." (*Id.*) Plaintiff also asserts that Kutz's "failure to take any action" regarding the "deplorable conditions of [unremoved] piles of snow and ice"—particularly as those conditions existed in the G and H block yards on February 20, 2014—"was the moving force behind" Plaintiff's injuries and alleged constitutional deprivation. (*Id.*)

Plaintiff's lawsuit stems from an incident that occurred on February 20, 2014, when "more than three quarters of each of [Green Haven's] outdoor exercise yards [were] buried in waist[-]high snow and ice." (*Id.* ¶ II(D)(12).) On that day, Kutz "gave [P]laintiff and other keeplocked inmates a direct order to proceed into the G & H block yard for a one[-]hour keeplock exercise." (*Id.* ¶ II(D)(14).) Kutz "had inspected the yard, [and] knew of its deteriorating condition as a result of . . . Lee's polic[ies]." (*Id.*) At around 10:10 A.M., Plaintiff was "walk[ing] down a snow and ice covered side walkway between H block and the snow[-]covered handball court in the G & H block yard" (*Id.*) To avoid a "frozen solid sheet of ice" that was on the walkway floor, Plaintiff stepped onto "a snowbank pile of ice from a prior storm." (*Id.*) When he did so, however, Plaintiff "lost [his] traction on the icy floor" and fell to the ground. (*Id.*) To "save his face and hand from injury," Plaintiff "folded himself" and "braced for impact." (*Id.*) He landed on his left shoulder, but as he landed on the ground, he also "heard a pop from his left ankle area." (*Id.*) After being helped to his feet by a fellow prisoner, Clive Webley, Plaintiff limped to E block and requested an emergency sick-call. (*Id.* ¶ II(D)(15).) A Green Haven doctor took an incident report and gave Plaintiff a bandage and painkillers. (*Id.*) After Plaintiff "filed a grievance for lack of adequate medical care and the hazardous conditions in the facility's yards," his "health care provider" ordered that he receive an X-ray and MRI.

(*Id.*)  As a result of his slip and fall, Plaintiff "suffered [an] extensive tear to his left ankle ligament," and was required to undergo "months of physical therapy and steroid injection treatment."  (*Id.* ¶ III.)  He also dislocated his left shoulder, which "now pops in and out of [its] socket at random," thereby "causing bodily and mental pains."  (*Id.*)

The allegations above are virtually identical to those in Plaintiff's SAC.  (*Compare* SAC ¶¶ II(D)(1)–(17), *with* TAC ¶¶ II(D)(1)–(19).)  Once again, Plaintiff alleges that the "actions, policies[,] and customs of the [D]efendant[s]" deprived him of a hazard-free environment in which to enjoy limited exercise, thus violating the Eighth Amendment.  (TAC ¶ II(D)(21).)  He alleges that Lee showed deliberate indifference to his health and safety by developing unconstitutional policies designed to "deny movement around the yards, deter exercise[,] and disregard safety within the yards during the winter months."  (*Id.* ¶ II(D)(22)(a).)  He alleges that Plimley showed deliberate indifference by "executing" these policies and by "knowingly expos[ing]" Plaintiff and other prisoners "to the deteriorating winter conditions in the facility's yards during the winter months of 2014, and order[ing] the G and H block yard safe for keeplocked inmates . . . on February 20, 2014."  (*Id.* ¶ II(D)(22)(b).)  Likewise, he alleges that Kutz showed deliberate indifference by "enforc[ing]" Lee's policies, failing to "remedy some of the constitutional violations present in [Green Haven's] G & H block yard," and by "knowingly expos[ing] [P]laintiff to [the] conditions that caused his injuries [on] February 20, 2014."  (*Id.* ¶ II(D)(22)(c).)

The TAC also incorporates a new allegation and legal theory that was absent from the SAC.  Specifically, Plaintiff alleges that the primary purpose of the challenged policies and actions was "not only to deprive [him] of his constitutional rights[,] but also to violate the *Anderson v. Coughlin* consent decree" (the "*Anderson* Decree").  (*Id.* ¶ II(D)(22)(d) (italics

added).)  According to Plaintiff, the *Anderson* Decree requires Defendants to "keep outdoor exercise areas at Green Haven . . . free of accumulation of ice and snow."  (*Id.* ¶ II(D)(18).)  A "general provision" of the *Anderson* Decree, Plaintiff alleges, was that the decree "be prominently posted in the Green Haven . . . law library to put all future defendants on notice." (*Id.*)  Thus, he concludes, Lee, Plimley, and Kutz all "had knowledge of the stipulations" in the *Anderson* Decree.  (*Id.*)  Finally, Plaintiff claims that as "a prisoner currently incarcerated in a New York State correctional facility," he is a "member . . . similarly situated" to the "*Anderson* class," and therefore "has authority to enforce the *Anderson* [Decree]" pursuant to Rule 71 of the Federal Rules of Civil Procedure.  (*Id.* ¶ II(D)(17).)  Plaintiff has attached a copy of the *Anderson* Decree to his TAC.  (*See* TAC Ex. B.)

Finally, Plaintiff alleges that when Defendants "breached their duty of care to [him]" and "expos[ed] him to dangerous conditions," they violated the "New York State Law of Gross Negligence," Articles One and Five of the New York State Constitution, and "New York State Corrections Law 70(2)."  (TAC ¶ II(D)(24).)  Plaintiff purports to bring this Action on his own behalf and on behalf of "all other similarly situated inmates."  (*See* TAC Caption.)  He requests that the Court (i) issue a declaratory judgment that Defendants violated the Constitution and New York state law; (ii) issue an injunction ordering Defendants and their agents to "refrain from their custom and policy of letting snow and ice accumulate in facility rec[reation] yards all winter, without removal[,] and [to] implement more adequate corrective measures"; (iii) grant compensatory damages of $550,000 as to Lee, $425,000 as to Plimley, and $25,000 as to Kutz; (iv) grant punitive damages of $2 million against Lee, "including [c]ourt cost[s] and [a]ttorney fee[s]"; (v) charge Lee criminally with the offense of "Reckless Endangerment in the First [D]egree"; and (vi) grant "future damages" of $3 million to Plaintiff "as a result of his injuries in

future [lost] income . . . [as] a Class A, C, D, L driver . . . for Decker Transports in New Jersey."
(*Id.* ¶ V.)

### B.  Procedural History

#### 1.  The Court's 2018 Opinion

In its 2018 Opinion, the Court granted Defendants' motion to dismiss the SAC, which contained substantially identical allegations as those raised in the TAC.  (*See generally* SAC.) As an initial matter, the Court observed that insofar as Plaintiff sought to assert claims on behalf of a putative class, "[i]t is well settled that a 'pro se plaintiff may not act as the representative of a class,'" and therefore dismissed such claims.  (2018 Op. 1 n.1 (italics omitted) (citing *Terio v. Johann*, No. 05-CV-5918, 2006 WL 2819659, at *1 n.4 (S.D.N.Y. Sept. 29, 2006), *aff'd*, 257 F. App'x 374 (2d Cir. 2007)) (gathering additional cases).)  Turning to Plaintiff's substantive allegations, the Court construed the SAC to allege violations of the Eighth Amendment, including a claim for damages based on injuries Plaintiff sustained as a result of his slip and fall, as well as a claim for declaratory and injunctive relief based on Defendants' alleged policies regarding winter snow and ice removal and limitations on exercise.  (*Id.* at 13.)

With respect to Plaintiff's slip and fall claim, the Court held that Plaintiff's allegations failed to satisfy either the objective or subjective prongs of an Eighth Amendment deliberate indifference claim.  (*See id.* at 14–21.)  To prevail on such a claim, the Court explained, a prisoner must "prove[] both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.'"  (*Id.* at 13–14 (quoting *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam)).)  To satisfy the objective prong, a plaintiff must show that his prison conditions, alone

or in combination, "pose[d] an unreasonable risk of serious damage to [his] health, which can be satisfied if an inmate is deprived of basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." (*Id.* at 14 (quotation marks omitted) (quoting *Aikens v. Royce*, No. 14-CV-663, 2016 WL 5720792, at *6 n.10 (S.D.N.Y. Sept. 30, 2016)).) To satisfy the subjective prong, a plaintiff must show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (*Id.* at 14–15 (quoting *Aikens*, 2016 WL 5720792, at *6 n.10).) Allegations of mere negligence, however, do not support a claim under the Eighth Amendment. (*Id.* at 15 (citing *Edwards v. City of New York*, No. 08-CV-5787, 2009 WL 2596595, at *2 (S.D.N.Y. Aug. 24, 2009)).)

Addressing the objective prong, the Court observed that "in prisons—where the conditions of confinement are not voluntary or recreational . . . —courts have found that 'slip-and-fall plaintiffs' do not state a cognizable claim under the Eighth Amendment," (*id.* at 15 (quoting *Korotkova v. United States*, 990 F. Supp. 2d 324, 330 (E.D.N.Y. 2014))), and gathered extensive case law illustrating this principle, (*see id.* at 15–17 (gathering cases)). The Court noted that it had previously dismissed an "earlier iteration" of Plaintiff's Eighth Amendment claim because his complaint failed to allege a "sufficiently serious" deprivation. (*Id.* at 15 (citing *McCray v. Lee*, No. 16-CV-1730, 2017 WL 2275024, at *6 (S.D.N.Y. May 24, 2017).) Once again, the Court found that under well-established authority, Plaintiff's allegations regarding his slip and fall did not "rise to the level of a constitutional violation." (*Id.* at 15.)

Nor did Plaintiff's new allegations in the SAC "constitute the type of exceptional circumstances warranting 'departure from the general rule barring Eighth Amendment liability in

prison slip and fall cases.'"  (*Id.* at 17 (brackets omitted) (quoting *Reynolds v. Powell*, 370 F.3d 1028, 1032 (10th Cir. 2004)).)  The Court observed that in *Akers v. Wexford Health Sources, Inc.*, No. 14-CV-997, 2014 WL 5023361 (S.D. Ill. Oct. 7, 2014), for example, the court denied a motion to dismiss where the plaintiff had alleged that the defendants "ordered" him to walk over ice in order to reach the prison dining hall, despite the defendants' knowledge of the clear environmental hazard, (2018 Op. 17 (citing *Akers*, 2014 WL 5023361, at *5)).  As he does here, (*see* TAC ¶ II(D)(14)), Plaintiff alleged in the SAC that Kutz ordered him to enter the yard for recreation time, (2018 Op. 17).  As the Court explained, however, *Akers* does not constitute controlling law, and other district courts have concluded that a correctional officer's order to cross an icy or slippery surface does not suffice to raise a claim under § 1983.  (*Id.* (gathering cases).)  The Court pointed out, moreover, that Plaintiff's allegation was distinguishable from the facts in *Akers*: Whereas the plaintiff in *Akers* had been ordered to walk across ice, Plaintiff had been ordered merely to enter Green Haven's recreational *yard*, which, as Plaintiff conceded, was not entirely covered with ice.  (*Id.* at 18.)[1]  Finally, the Court explained that Plaintiff does not have "unique characteristics" that would make him especially vulnerable to normal wintry conditions.  (*Id.* at 19 (citing *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998), where the defendants knew the plaintiff was on crutches and had repeatedly fallen in the shower).)

But even if Plaintiff had adequately alleged facts establishing the objective prong of his deliberate indifference claim, the Court went on to explain why the SAC failed to allege that Defendants acted with a "sufficiently culpable state of mind."  (*Id.* (citation omitted).)  At most, observed the Court, Plaintiff had alleged merely that Defendants were negligent, but "not that

---

[1] Indeed, the *Akers* court contrasted the facts before it "with the exact circumstances that faced Plaintiff here—'a snowy area with isolated ice patches.'"  (2018 Op. 18–19 (quoting *Akers*, 2014 WL 5023361, at *5).)

any [of them] obdurately and wantonly refused to remedy a specific risk to Plaintiff." (*Id.* at 20 (brackets omitted) (quoting *Seymore v. Dep't of Corr. Servs.*, No. 11-CV-2254, 2014 WL 641428, at *4 (S.D.N.Y. Feb. 18, 2014)).) Citing case law throughout the Second Circuit, the Court concluded that "[a]ny involvement Defendants may have had in failing to remedy the conditions in the yard or by allegedly creating or implementing the policies and customs related to winter ice removal—even if they were on notice—are negligence claims and cannot support an Eighth Amendment claim." (*Id.* (gathering cases).)

After finding that Plaintiff had failed to establish either prong of his deliberate indifference claim, the Court went on to consider Defendants' qualified immunity defense. (*See id.* at 21–23.) "Qualified immunity shields a defendant from standing trial or facing other burdens of litigation 'if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'" (*Id.* at 21 (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001)).) Because no Supreme Court or Second Circuit case has held that a failure to prevent a slippery surface constitutes an objectively serious risk of harm under the Eighth Amendment, the Court concluded that an inmate's "constitutional right against a failure to remedy naturally accumulating ice or snow during winter months has not been clearly established." (*Id.* at 22.) Accordingly, the Court found that Defendants were protected by qualified immunity. (*Id.* at 22–23.)

Turning to Plaintiff's request for declaratory and injunctive relief, the Court found that this request was moot. (*See id.* at 23.) In the Second Circuit, it is well established "that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." (*Id.* at 23–24 (quoting *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996)) (citing

*Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.")).)  The Court therefore dismissed these claims.  (*See id.*)

In a footnote, the Court explained that it "[had] not interpret[ed] Plaintiff's [SAC] to seek any relief for the alleged policies and customs related to winter snow and ice removal and access to exercise other than injunctive relief."  (*Id.* at 24 n.11.)  However, to the extent Plaintiff did intend to seek damages for an Eighth Amendment claim based on Defendants' policies restricting access to exercise—separate from his slip and fall injuries—the Court concluded that Plaintiff's allegations failed to state a claim.  (*Id.*)  "Temporary limitations on access to exercise, without full denial of opportunities," the Court noted, "do[] not violate the Eighth Amendment."  (*Id.* (brackets omitted) (quoting *Burns v. Martuscello*, No. 13-CV-486, 2015 WL 541293, at *12 (N.D.N.Y. Feb. 10, 2015)).)  The Court found that Defendants' choice temporarily to restrict access to some of the recreation yards because of ice was not "based on a culpable state of mind or deliberate indifference to Plaintiff's health or safety, but the legitimate penological interest of waiting until the yard was cleared of ice and snow so that it would be safe for inmates to use." (*Id.* (brackets omitted) (quoting *Burns*, 2015 WL 541293, at *12).)  With respect to the alleged limitation on indoor exercise, the Court invoked the Second Circuit's decision in *Anderson v. Coughlin*, 757 F.2d 33 (2d Cir. 1985), explaining that, "[w]ith outdoor recreation space provided and opportunity for its daily use assured, the absence of additional exercise space indoors and of recreational equipment for use in the outdoor space is not a denial of constitutional rights," (*id.* (quoting *Anderson*, 757 F.2d at 36)).  Here, observed the Court, "Plaintiff made use of outdoor recreation options."  (*Id.*)  Thus, the Court found that Plaintiff failed to state an Eighth Amendment denial-of-exercise claim.  (*See id.*)

Having dismissed all of Plaintiff's federal claims, (*see id.* at 24), the Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims, (*id.* at 25–26).

### 2.  The Second Circuit Remand

On April 16, 2018, Plaintiff appealed the Court's 2018 Opinion to the U.S. Court of Appeals for the Second Circuit.  (Dkt. No. 77.)  In an opinion issued on June 18, 2020, the Second Circuit affirmed the Court's dismissal of Plaintiff's Eighth Amendment claim stemming from his slip and fall in the Green Haven recreational yard.  *See McCray v. Lee*, 963 F.3d 110, 120–21 (2d Cir. 2020) (affirming "dismissal of so much of the [SAC] as seeks relief on the basis that the combination of the slippery conditions in the recreation yards and Kutz's order that McCray go into the yard on February 20, 2014 violated McCray's rights under the Eighth Amendment").[2]  Plaintiff's SAC, the court noted, "did not make any claims of exceptional circumstances that would elevate the Green Haven yard conditions beyond the typical level of danger presented by a slippery sidewalk or a wet floor."  *Id.* at 120.  Thus, the court dismissed this claim "substantially for the reasons stated by th[is] [C]ourt in [the 2018 Opinion]."  *Id.* at 120–21.  The Second Circuit also concluded that this Court had "properly dismissed as moot [Plaintiff's] requests for injunctive [and] declaratory relief," as the SAC "itself showed that [Plaintiff] had been moved to a different correctional facility[,]" which "moots his claims for declaratory or injunctive relief against officials of the transferring facility."  *Id.* at 117.

The Second Circuit, however, vacated that portion of the 2018 Opinion which concluded that Plaintiff had failed to state an Eighth Amendment claim for denial of exercise.  *See id.* at

---

[2] During Plaintiff's appeal, he moved for appointment of counsel.  *McCray*, 963 F.3d at 116.  Though his motion was granted to the extent counsel was to brief the Eighth Amendment issues, Plaintiff declined the appointment.  *Id.*  After Defendants filed their appellate brief, the Second Circuit appointed counsel "to present Eighth Amendment positions on behalf of [Plaintiff] as amicus curiae."  *Id.* (italics omitted).

118–20.  As an initial matter, the Second Circuit disagreed with this Court's conclusion that

Plaintiff had "requested only equitable relief for his Eighth Amendment claims of denial of

physical exercise," noting that the SAC had requested compensatory damages "[w]ithout

suggesting that [Plaintiff's] monetary requests were limited to his slip-and-fall claims."  *Id.* at

118.  The Second Circuit went on to discuss why, in its view, the SAC had alleged more than a

mere "temporary restriction of access."  *See id.* (brackets and citation omitted).  As it explained,

> While the denial of access to meaningful physical exercise ended when warm
> weather allowed the snow and ice to melt fully and not refreeze, the [SAC] did not
> allege that [D]efendants merely imposed temporary restrictions.  It alleged that one
> or more yards were entirely closed down for the Winter of 2014, and that Lee
> adopted a policy, followed by Plimley, to allow the exercise yards to accumulate
> snow and ice, without clearing any of it away, for the entire Winter.  The [SAC]
> does not suggest that there was any penological reason, in disregard of the rights of
> inmates for a meaningful opportunity for physical exercise, to refuse to have the
> yards cleared of ice and snow for an entire third of a year.

*Id.* at 118.  Moreover, although the 2018 Opinion stated that "Plaintiff made use of outdoor

recreation options," (2018 Op. 24 n.11), the Second Circuit found that "[t]his characterization of

[Plaintiff's] acts did not accept the factual allegations of the [SAC] as true[,]" *McCray*, 963 F.3d

at 118.  To the extent the 2018 Opinion focused on the principle that "an occasional day without

exercise" does not violate the Eighth Amendment, the relevant language in *Anderson* provides

that a lack of indoor exercise and the occasional day without exercise do not give rise to a

constitutional claim where "outdoor recreation space is provided, *and opportunity for its daily*

*use is assured*."  *Id.* (brackets omitted) (quoting *Anderson*, 757 F.2d at 36).  "Any assumption

that [D]efendants here assured the opportunity for meaningful daily outdoor exercise in the

Winter of 2014," the Second Circuit observed, "is squarely contradicted by [Plaintiff's] [SAC]."

*Id.* (noting Plaintiff's allegations "that with overcrowding, the closure of one or more of the

yards, and the shrinking space within the yards because of [D]efendants' refusal to have ice and

snow cleared away, . . . [Plaintiff] in fact did not have room to exercise and was denied any meaningful exercise opportunity for four months").

As for the subjective prong of Plaintiff's denial-of-exercise claim, the Second Circuit pointed to Plaintiff's allegation that the "impassible conditions in the yards were visible through windows at the ends of hallways and that Lee and Plimley received grievances and complaints from inmates about those conditions." *Id.* at 119.  The court also found that Plaintiff's allegation that Green Haven was at maximum capacity "permit[ted] a reasonable inference that Lee and Plimley must have known that their closing of one or more yards was causing overcrowding in the yards that remained open, even as the accumulating snow and ice, which they refused to have cleared, was constricting that space." *Id.*

The Second Circuit also disagreed with the Court's alternative ruling that Defendants would be entitled to dismissal on the basis of qualified immunity. *Id.* at 119.  In the Second Circuit's view, the 2018 Opinion—which stated that "there is no clearly established constitutional right to a prison yard without naturally accumulating ice or snow during winter months," (2018 Op. 23)—"defined the right to a meaningful opportunity for physical exercise at an unduly narrow level of specificity," *McCray*, 963 F.3d at 120.  The right to a meaningful opportunity for exercise, explained the court, "is not confined to a particular season," and "[t]he right need not be described with specific references to the weather or characteristics of the seasons." *Id.*  In the Second Circuit, "the rights of prisoners to a meaningful opportunity for physical exercise had been clearly established nearly three decades before the events" in the SAC, and thus, the court concluded that qualified immunity would not shield Defendants from Plaintiff's denial-of-exercise claim. *See id.*

Accordingly, the Second Circuit concluded that Plaintiff's Eighth Amendment denial-of-exercise claims—at least with respect to Lee and Plimley—should not have been dismissed. *Id.* Because the SAC was unclear as to whether Plaintiff intended to assert this claim against Kutz, the Second Circuit advised that Plaintiff should be given an opportunity to amend the SAC "to state facts showing the plausibility of such a claim against Kutz." *Id.* Having reinstated Plaintiff's denial-of-exercise claim, the court also reinstated Plaintiff's state law claims. *Id.*

### 3.  Plaintiff's TAC and the Instant Motion

On August 6, 2020, the Court gave Plaintiff leave to file a third amended complaint "which clarifies any denial of exercise claim as to Defendant Kutz." (Dkt. No. 96.)  Plaintiff filed his TAC on August 13, 2020. (Dkt. No. 97.)  On September 21, 2020, Defendants filed a pre-motion letter outlining the grounds for their proposed motion to partially dismiss the TAC. (Dkt. No. 105.)  By memo endorsement dated September 22, 2020, the Court set a briefing schedule for the instant Motion. (Dkt. No. 106.)  Pursuant to this schedule, Defendants filed the instant Motion and supporting papers on November 1, 2020. (*See* Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 116).)  On November 30, 2020, Plaintiff filed a document styled as a "Motion for Summary Judgment Pursuant to the Offensive Collateral Estoppel Doctrine and Plaintiff's Response to Defendant's [sic] Answer," which the Court construes as his Opposition to the instant Motion. (*See* Pl.'s Opp'n (Dkt. No. 121).)[3] Defendants filed their Reply on December 14, 2020. (Dkt. No. 123.)

---

[3] To the extent Plaintiff intends to move for summary judgment, his motion is untimely, and he failed to comply with § II.A of the Court's Individual Rules of Practice, which requires that the would-be movant submit a pre-motion letter.

## II.  Discussion

### A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)).

#### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question").

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based.  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).  In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's

favor.  *Id.* at 57.  However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers

evidence outside the pleadings a plaintiff must either come forward with controverting evidence

or rest on the pleadings if the evidence offered by the defendant is immaterial.  *See Katz v.*

*Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017).  If the extrinsic evidence presented by

the defendant is material and controverted, the Court must make findings of fact in aid of its

decision as to standing.  *See Carter*, 822 F.3d at 57.

### 2.  Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation

marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the allegations

in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to

relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims

across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also*

*Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605

(2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (citation and italics omitted)).

B.  Analysis

Defendants urge the Court to dismiss Plaintiff's Eighth Amendment slip and fall claim and his claim for declaratory and injunctive relief pursuant to the law of the case doctrine.  (*See* Defs.' Mem. 2, 8–9.)  They also argue that the TAC's new claim—based on Defendants' alleged violation of the *Anderson* Decree—exceeds the permissible scope of Plaintiff's leave to amend and also fails as a matter of law.  (*See id.* at 2, 9–10.)  Finally, they argue that the Eleventh Amendment bars Plaintiff's damages claim against Defendants in their official capacity, and that the Court lacks jurisdiction over Plaintiff's state law claims.  (*See id.* at 10–11.)  Defendants do not seek to dismiss Plaintiff's Eighth Amendment denial-of-exercise claim.  (*See generally id.*)

At the outset, the Court reiterates its previous conclusion that, to the extent Plaintiff seeks to bring a class action and assert claims on behalf of third parties, (*see* TAC (styling this Action as a "Class Action Complaint")), those claims are dismissed.  As it observed in its 2018 Opinion, "[i]t is well settled that a 'pro se plaintiff may not act as the representative of a class.'"  (2018 Op. 1 n.1 (italics omitted) (citing *Terio*, 2006 WL 2819659, at *1 n.4).)  *See also* 28 U.S.C. § 1654 ("[T]he parties may plead and conduct their own cases personally or by counsel."); *Berrios v. N.Y.C. Housing Auth.*, 564 F.3d 130, 132 (2d Cir. 2009) ("Although § 1654 thus recognizes that an individual generally has the right to proceed pro se with respect to his own claims or claims against him personally, the statute does not permit unlicensed laymen to represent anyone else other than themselves." (citation, quotation marks, brackets, and italics omitted)); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause pro se means to

appear for one's self, a person may not appear on another person's behalf in the other's cause." (italics omitted)).

The Court also notes that to the extent Plaintiff sues Defendants for damages in their official capacities, (*see* TAC ¶¶ II(D)(3), (5)), those claims must be dismissed.  The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI. Generally, a state cannot be sued in federal court unless it has waived—or Congress has properly abrogated—its Eleventh Amendment sovereign immunity.  *See Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006).  This immunity extends "beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state."  *Gollomp*, 568 F.3d at 366 (quoting *Woods*, 466 F.3d at 236).  Thus, barring waiver or abrogation, state officials are immune from suits for monetary damages in their official capacity, *see Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003), including for causes of action brought pursuant to state law, *see Seitz v. New York State*, No. 18-CV-4149, 2019 WL 4805257, at *8 (E.D.N.Y. Sept. 30, 2019).  "New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983."  *Megginson v. New York*, No. 19-CV-7583, 2019 WL 4194497, at *1 (S.D.N.Y. Sept. 4, 2019).  Accordingly, the Court dismisses all claims brought against Defendants in their official capacities.

Finally, the Court cannot charge Lee criminally as Plaintiff requests.  (*See* TAC ¶ V.) Charging decisions are made by prosecutors, not by courts.  *See, e.g.*, *Jones v. Harris*, 665 F. Supp. 2d 384, 404 (S.D.N.Y. 2009) (observing that "[o]nly a prosecutor can file criminal charges

against a citizen," and a plaintiff's putative attempt to assert criminal charges against a defendant "do[es] not give rise to constitutional claims that are cognizable in [federal] court[s] under 42 U.S.C § 1983").

### 1.  Plaintiff's Eighth Amendment Denial-of-Exercise Claim as to Kutz

Although Defendants do not brief the issue, the Court concludes that Plaintiff has stated an Eighth Amendment denial-of-exercise claim as to Kutz.  As discussed *supra*, the Second Circuit concluded that the SAC adequately stated such a claim with respect to Lee and Plimley but advised the Court that Plaintiff should be granted leave to file a third amended complaint "to state facts showing the plausibility of such a claim against Kutz."  *McCray*, 963 F.3d at 120.  The TAC substantially replicates the SAC's allegations with respect to Lee and Plimley, (*compare* SAC ¶¶ II(D)(1)–(21), *with* TAC ¶¶ II(D)(1)–(22)), and thus, it is clear Plaintiff has once again stated an Eighth Amendment denial-of-exercise claim as to these Defendants.  But whereas "it [was] unclear from the [SAC] whether [Plaintiff] intended to assert his denial-of-exercise claim also against Kutz," *McCray*, 963 F.3d at 120, the TAC levels virtually the same allegations against Kutz as it does with respect to Lee and Plimley.  To take one example, although the SAC suggested that Lee and Plimley had knowledge of the impassible conditions in the recreation yards because such conditions were "easily visible from the facility's long hallways and through the windows of the facility's housing blocks," (SAC ¶ II(D)(7)), the TAC makes clear that Kutz would also have possessed such knowledge based on these same factors, (*see* TAC ¶ II(D)(9)).  Under the Second Circuit's reasoning, Plaintiff's allegation is sufficient "to give [Kutz] fair notice as to the nature of [his] claims and the basis for his assertion that [his] adamant refusal to have any yards cleared of snow and ice for the entire Winter resulted from [his] deliberate indifference to inmates' constitutional rights to a meaningful opportunity for physical exercise."

21

*McCray*, 963 F.3d at 119 (citing Plaintiff's allegation "that the impassible conditions in the yards were visible through windows at the ends of hallways").  Accordingly, the Court concludes that in addition to stating an Eighth Amendment denial-of-exercise claim as to Lee and Plimley, Plaintiff has adequately stated such a claim as to Kutz as well.  As Defendants do not seek to dismiss Plaintiff's denial-of-exercise claim, this claim will go forward.

### 2.  Plaintiff's Eighth Amendment Slip and Fall Claim

As discussed above, the Court has already dismissed Plaintiff's slip and fall claim not only because the allegations "fail[] to allege a sufficiently serious deprivation," (2018 Op. 15 (citation and quotation marks omitted)), but also because "Plaintiff cannot demonstrate [that] Defendants acted with a sufficiently culpable state of mind," (*id.* at 19 (citation and quotation marks omitted)).  The Second Circuit has affirmed this conclusion.  *See McCray*, 963 F.3d at 120–21 (affirming dismissal of slip and fall claim "substantially for the reasons stated by th[is] [C]ourt in [its 2018 Opinion]").  Here, the TAC's factual allegations with respect to Plaintiff's slip and fall are virtually identical to those in the SAC.  (*Compare* SAC ¶¶ II(D)(12)–(16), *with* TAC ¶¶ II(D)(14)–(16).)

"The mere filing of an [a]mended [c]omplaint does not entitle [a plaintiff] to relitigate his claims absent new factual allegations."  *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316 (S.D.N.Y. 2015), *aff'd*, 626 F. App'x 20 (2d Cir. 2015).  Because the factual claims in the TAC are materially identical to those in the SAC, "the law of the case doctrine counsels against reconsideration of the Court's . . . dismissal of [Plaintiff's slip and fall claim]."  *Id.*  Accordingly, Plaintiff's Eighth Amendment slip and fall claim is dismissed for the same reasons discussed at length in the Court's 2018 Opinion.  *See Perkins v. Perez*, No. 17-CV-1341, 2020 WL 248686, at *4–5 (S.D.N.Y. Jan. 16, 2020) (applying the law-of-the-case doctrine to dismiss portions of a pro

se complaint where the two pleadings at issue were "substantially identical"); *Mateo v. Dawn*, No. 14-CV-2620, 2016 WL 5478431, at *4 (S.D.N.Y. Sept. 28, 2016) (same); *Guttilla v. City of New York*, No. 14-CV-156, 2016 WL 1255737, at *3 (S.D.N.Y. Mar. 29, 2016) (same).

### 3.  Plaintiff's Claim for Declaratory and Injunctive Relief

Just as the Court previously dismissed as moot Plaintiff's claims for declaratory and injunctive relief, (*see* 2018 Op. 23–24)—a decision upheld by the Second Circuit, *see McCray*, 963 F.3d at 117 (noting "that the [D]istrict [C]ourt properly dismissed as moot [Plaintiff's] requests for injunctive or declaratory relief against officials at Green Haven" because "[t]he [SAC] itself showed that [Plaintiff] had been moved to a different correctional facility")—it must again do the same here.  As the Court explained in its 2018 Opinion, "[i]t is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."  (2018 Op. 23 (quoting *Prins*, 76 F.3d at 506).)  *See also Salahuddin*, 467 F.3d at 272 ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").  As the Court also explained, Plaintiff was transferred from Green Haven sometime after the actions giving rise to this Action.  (2018 Op. 23.)  At the time the TAC was filed, Plaintiff resided at Auburn Correctional Facility, (TAC ¶ I(A)), and now resides at Central New York Psychiatric Center, (Dkt. No. 126).  Now, as before, Plaintiff's claims for declaratory and injunctive relief against officials at Green Haven are moot.  These claims are dismissed.

### 4.  Defendants' Alleged Violation of the *Anderson* Decree

As noted, the TAC alleges for the first time that Defendants' policies and actions violated the *Anderson* Decree.  (*See* TAC ¶¶ II(D)(17)–(18), (22)(d).)  The *Anderson* Decree, which Plaintiff attaches to the TAC, covers a class defined as "all those persons who are or will be

confined in the disciplinary [Special Housing Units ('SHU(s)')] of the defendants' facilities located in the Southern District of New York."  (TAC Ex. B at 805.)  Plaintiff, however, does not allege that he was housed in the Green Haven SHU during the events in question, and thus, he lacks standing to enforce the terms of the *Anderson* Decree.  *See Arce v. O'Connell*, 427 F. Supp. 2d 435, 442 (S.D.N.Y. 2006) ("A plaintiff who is not a party to or a member of the class protected by a consent decree has no standing to bring a motion for contempt alleging violations of the decree."); *Harkness Apartment Owners Corp. v. F.D.I.C.*, No. 87-CV-7080, 1993 WL 138772, at *3 (S.D.N.Y. Apr. 26, 1993) ("It is well established that parties lack standing to enforce the terms of a consent decree or stipulation of settlement if they are neither party to the decree nor designated as intended beneficiaries."); *Pollard v. City of Hartford*, 539 F. Supp. 1156, 1163 (D. Conn. 1982) (explaining that if "plaintiffs are not within the [covered] class [under a consent decree], then they have no standing to complain of any alleged violation of the decree").  Accordingly, the Court dismisses this claim.

### 5.  Plaintiff's State Law Claims

Finally, to the extent Plaintiff seeks to assert state law claims of negligence, they are barred by New York Correction Law § 24, which provides that "[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [DOCCS] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee." N.Y. Corr. Law § 24; *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (holding that § 24 applies to claims in federal court).  "Courts in the Second Circuit have long held that [§] 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment." *Davis v.*

*McCready*, 283 F. Supp. 3d 108, 123 (S.D.N.Y. 2017) (collecting cases).  Defendants clearly

acted within the scope of their employment, as their actions as alleged in the TAC "arose as a

result of [their] discharging their duties as correctional officers."  *Boyd v. Selmer*, 842 F. Supp.

52, 57 (N.D.N.Y. 1994).  Further, "there is no private right of action under the New York State

Constitution where . . . remedies are available under § 1983."  *Hershey v. Goldstein*, 938 F. Supp.

2d 491, 520 (S.D.N.Y. 2013) (citation omitted).  Thus, Plaintiff's state law claims are barred.

<u>III.  Conclusion</u>

For the reasons stated above, all claims in the TAC are dismissed except for Plaintiff's

Eighth Amendment denial-of-exercise claim, which survives as to all Defendants.  Because

Plaintiff has now had two occasions to amend his pleading, the claims that have not survived this

Motion are dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the instant Motion, (Dkt. No.

115), as well as Plaintiff's putative summary judgment motion, (Dkt. No. 121).

SO ORDERED.

Dated:   September 24, 2021
        White Plains, New York

_____
        KENNETH M. KARAS
     United States District Judge